[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 328.]

THE STATE EX REL. MAGHIE & SAVAGE, INC., APPELLEE, *v.* NOBEL, APPELLANT.

[Cite as *State ex rel. Maghie & Savage, Inc. v. Nobel*, 1998-Ohio-476.]

*Workers' compensation—Alleged violation of a specific safety requirement involving manually propelled mobile scaffold—Ohio Adm.Code 4121:1-3-10(E)(12) and (F)(5)—Securing scaffolding to building—Industrial Commission abuses its discretion in finding violations of Ohio Adm.Code 4121:1-3-10(E)(12) and (F)(5), when.*

(No. 95-1366—Submitted January 13, 1998—Decided April 1, 1998.)

APPEAL from the Court of Appeals for Franklin County, No. 94APD05-779.

————————————

{¶ 1} On May 13, 1991, appellant-claimant, Michael A. Nobel, was working as a drywall finisher for appellee Maghie & Savage, Inc. ("M & S"). Nobel was using a scaffold to apply a spackling compound to an interior wall at the project site. The scaffold was approximately eighteen feet high and six feet wide.

{¶ 2} At some point, Nobel propped a four-foot stepladder against the wall on the top level of the scaffold. Nobel was on the ladder when the scaffold moved away from the wall, dislodging the ladder and causing Nobel to fall to the floor below.

{¶ 3} After his workers' compensation claim was allowed, Nobel moved the Industrial Commission of Ohio for additional compensation, alleging that M & S had violated several specific safety requirements. The commission granted Nobel's application in part, writing:

"[Nobel's] injury was the result of Employer's failure to secure the scaffold to the building as required by OAC Sections 4121:1-03[*sic*]-10(E)(12) and (F)(5) * * *.

"* * *

"[I]t is held that employer was in specific violation of OAC Section 4121:1-3-10(E)(12) or the almost identical provision of Section 4121:1-03[*sic*]-10(F)(5). It is ruled that a manually propelled mobile scaffold (Section 4121:1-03[*sic*]-10(G)) may be either a tube and coupler scaffold or a tubular welded frame scaffold. Regardless of which, it MUST be secured to the wall or building. The photographs at Exhibits 1A and 1B demonstrate that this still had not been done when the same were taken. Gail Hollingshead verified the location in his testimony (pp. 41 and 42 of the transcript) and also the identity of the scaffold. Dave Mercer advised Philip Merritt that the wheels had been borrowed from another contractor and attached to the rented scaffold (Exhibit 3F *supra*). Therefore, the same was not designed exclusively as a manually propelled mobile scaffold, but was adapted to that end.

"* * *

"[T]he facts of this case demonstrate the reason employers are bound to secure scaffolds to the building or interior wall regardless of their compliance with the locking provisions of Section 4121:1-03[*sic*]-10(G)(2). Compliance with Sections 4121:1-03[*sic*]-10(E)(12) and (F)(5) would have prevented this potentially fatal injury."

{¶ 4} M & S filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in finding violations of the two sections. The court of appeals agreed and issued a writ of a mandamus.

{¶ 5} This cause is now before this court upon an appeal as of right.

––––––––––––––––––

*Arter & Hadden* and *Michael L. Maxfield*, for appellee.

*Daniel D. Connor Co., L.P.A.,* and *Daniel D. Connor*, for appellant.

––––––––––––––––––

**PFEIFER, J.**

{¶ 6} In this case we are asked to determine whether the court of appeals properly found that the commission abused its discretion. For the reasons that follow, we affirm the judgment of the court of appeals.

{¶ 7} Ohio Adm.Code 4121:1-3-10(B) sets forth the relevant definitions as follows:

"(20) 'Manually propelled mobile scaffold' means a portable rolling scaffold equipped with casters.

"* * *

"(36) 'Tube and coupler scaffold' means an assembly consisting of tubing which serves as posts, bearers, braces, ties, and runner, a base supporting the posts, and special couplers which serve to connect the uprights and to join the various members.

"(37) 'Tubular welded frame scaffold' means a sectional panel or frame metal scaffold built up of prefabricated welded sections which consists of posts and horizontal bearers with intermediate members."

{¶ 8} The litigants agree that the scaffold from which Nobel fell qualified as a "manually propelled mobile scaffold" under Ohio Adm.Code 4121:1-3-10(B)(20). They do not dispute that the scaffold, as an assembly, was either a "tube and coupler scaffold" or a "tubular welded frame scaffold."

{¶ 9} Ohio Adm.Code 4121:1-3-10 reads:

"(G) Manually propelled mobile scaffolds.

"* * *

"(2) Casters shall be properly designed for strength and dimensions to support four times the maximum rated load. All casters shall be provided with a locking device to hold the scaffold in position."

{¶ 10} It is undisputed that the scaffold's casters had locking devices and that one of them somehow disengaged. The commission found no (G)(2) violation

because a first-time failure of a safety device cannot sustain a finding of a violation, absent employer knowledge of the defect. *State ex rel. Taylor v. Indus. Comm.* (1994), 70 Ohio St.3d 445, 449, 639 N.E.2d 101, 104; *State ex rel. Jeep Corp. v. Indus. Comm.* (1989), 42 Ohio St.3d 83, 537 N.E.2d 215; *State ex rel. M.T.D. Products, Inc. v. Stebbins* (1975), 43 Ohio St.2d 114, 72 O.O.2d 63, 330 N.E.2d 904. Nobel does not contest this finding.

{¶ 11} The commission did, however, find violations of Ohio Adm.Code 4121:1-3-10(E)(12) and (F)(5), which state:

"(E) Tube and coupler scaffolds.

"* * *

"(12) The entire scaffold shall be tied to and securely braced against the building at intervals not to exceed thirty feet horizontally and twenty-six feet vertically.

"* * *

"(F) Tubular welded frame scaffolds.

"* * *

"(5) To prevent movement, the scaffold shall be secured to the building or structure at intervals not to exceed thirty feet horizontally and twenty-six feet vertically."

{¶ 12} M & S successfully argued below that the commission's VSSR award was an abuse of discretion because it violated the rules of requirement specificity and strict construction. Strict construction and requirement specificity are primarily rules of interpretation. The problem in this case, however, is more of application than interpretation. Individually, the specific safety requirements are clear, without the ambiguity that necessitates interpretative effort. It is the collective application of the three specific safety requirements that has generated the controversy before us.

**{¶ 13}** In *State ex rel. Harris v. Indus. Comm.* (1984), 12 Ohio St.3d 152, 153, 12 OBR 223, 224, 465 N.E.2d 1286, 1288, this court held that the commission "has the discretion to interpret its own rules; however, where the application of those rules to a unique factual situation gives rise to a patently illogical result, common sense should prevail."

**{¶ 14}** Caster locks and structural tie-up have the same stated purpose—to secure the scaffold. See Ohio Adm.Code 4121:1-3-10(F)(5) ("[t]o prevent movement, the scaffold shall be secured to the building") and (G)(2) ("[a]ll casters shall be provided with a locking device to hold the scaffold in position"). Neither caster locks nor structural tie-up is mentioned in Ohio Adm.Code 4121:1-3-10(C), which lists the general requirements for *all* scaffolds. We conclude that neither caster locks nor structural tie-up is necessary in all situations, whether due to a lack of hazard, the presence of an equivalent means of protection, or some other reason. Accordingly, we conclude that there are situations in which caster locks are the lone prescribed safety device.

**{¶ 15}** The common purpose of caster locks and structural tie-ups and the absence of a requirement for secondary protection within the individual specific safety requirements suggest that the code's authors viewed the two methods as providing equivalent protection. We conclude that it is illogical to require an employer to provide duplicate protection in the absence of a duplicate-protection requirement. For the reasons stated above, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., dissents.

RESNICK and F.E. SWEENEY, JJ., dissent and would reverse the judgment of the court of appeals and return this cause to the Industrial Commission for additional findings.