THE STATE EX REL. R. BAUER & SONS ROOFING & SIDING, INC., APPELLANT,
v. INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. R. Bauer & Sons Roofing & Siding,
Inc. v. Indus. Comm.* (1998), 84 Ohio St.3d 62.]

(No. 95–2633—Submitted August 19, 1998—Decided December 2, 1998.)

64

*Dunlevey, Mahan & Furry, L.P.A., Gary W. Auman* and *D. Patrick Kasson,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Cheryl J. Nester,* Assistant Attorney General, for appellee Industrial Commission.

*Gibson & Robbins–Penniman* and *Diane Burris,* for appellee McClellan.

*Per Curiam.* Three questions are presented for our review: (1) Did the commission abuse its discretion in allowing the amendment of McClellan's VSSR application to allege a violation of Ohio Adm.Code 4121:1–3–03(J)(1), the safety-belt/lifeline requirement? (2) Did the commission abuse its discretion in finding that Ohio Adm.Code 4121:1–3–09(F)(1), the catch-platform requirement, applies to gutter repair? and (3) Did the commission abuse its discretion in granting rehearing based on McClellan's affidavit? For the following reasons, we hold that the commission properly allowed McClellan's amendment and found a violation of Ohio Adm.Code 4121:1–3–03(J)(1). We further hold that the commission did not abuse its discretion in interpreting Ohio Adm.Code 4121:1–3–09(F)(1), but that the commission did abuse its discretion in granting rehearing to find a violation of this rule. Accordingly, we affirm in part and reverse in part.

### VSSR Application Amendment

Bauer first argues that McClellan's amendment was untimely under Ohio Adm.Code 4121–3–20(A)(1). Paragraph (A) of this rule establishes a statute of limitations—two years from the claimant's injury date—for filing VSSR applications. *State ex rel. Kirby v. S.G. Loewendick & Sons* (1992), 64 Ohio St.3d 433, 435–436, 596 N.E.2d 460, 462. Paragraph (A)(1) provides the deadline for amending these applications, but allows only amendments that "merely clarify a previously alleged violation" and do not "raise any unstated claim." For complying amendments, this paragraph provides:

"Claimant or his representative may submit an amendment of his [VSSR] application * * * beyond the expiration of two years following the date of injury * * *. *Any such amendment must be submitted within thirty days of the receipt by the claimant or his counsel of the report of the investigation by the industrial commission into the alleged safety violation.* * * * Such amendment shall set forth all specific safety requirements omitted from the application made prior to the expiration of the two-year period which the claimant alleges were the cause of the injury * * *, but which were omitted by reason of mistake or incompleteness." (Emphasis added.)

The commission's rules are subject to the canons of statutory construction, *State ex rel. Miller Plumbing Co. v. Indus. Comm.* (1948), 149 Ohio St. 493, 496–497, 37 O.O. 197, 199, 79 N.E.2d 553, 555, including the canon that words be given their plain and ordinary meaning. *State ex rel. Brilliant Elec. Sign Co. v. Indus. Comm.* (1979), 57 Ohio St.2d 51, 54, 11 O.O.3d 214, 216, 386 N.E.2d 1107, 1109. Thus, Bauer points out that most dictionaries define "must" in terms of necessity or obligation. See, *e.g.,* Webster's Third New International Dictionary (1986) 1492. Bauer argues that the italicized sentence in Paragraph (A)(1) forbids amendments filed more than thirty days after claimant's receipt of the commission's VSSR report. We would accept Bauer's argument had we not already overridden the commission's authority to refuse those amendments that merely clarify the original charges.

Fueled by the principle that "technical rules of procedure should not be allowed to defeat an otherwise valid claim under the Workers' Compensation Act," *State ex rel. Dillon v. Dayton Press, Inc.* (1983), 6 Ohio St.3d 295, 299, 6 OBR 357, 360, 453 N.E.2d 566, 569, we have on at least three occasions clarified the underlying principles governing either the thirty-day amendment deadline in Ohio Adm.Code 4121–3–20(A)(1) or a similar amendment deadline in former Ohio Adm.Code 4121–3–20(D). In *Dillon,* a case under former Paragraph (D), we established a rule allowing claimants to clarify charges through amendment even after the two-year limitations period for filing a VSSR application had expired. *Id.* at 299–300, 6 OBR at 361, 453 N.E.2d at 569–570. We reasoned that amendments to VSSR

applications should not be held to a more exacting standard than are amendments to an ordinary civil complaint, which, providing that the cause of action is not changed, may be amended after the statute of limitation expires. *Id.* at 299, 6 OBR at 360–361, 453 N.E.2d at 569, quoting *Kaiser v. Indus. Comm.* (1940), 136 Ohio St. 440, 445–446, 17 O.O. 22, 24, 26 N.E.2d 449, 453.

Likewise, in *State ex rel. Bailey v. Indus. Comm.* (1986), 23 Ohio St.3d 53, 54, 23 OBR 127, 128, 491 N.E.2d 308, 310, we specifically held that the claimant could clarify his VSSR application under former Paragraph (D) "despite the running of the statute of limitations for such amendments." See, also, *State ex rel. Kirby v. Loewendick*, 64 Ohio St.3d at 435, 596 N.E.2d at 462 (confirming that "[r]egardless of whether the commission can refuse to consider an amended application filed more than thirty days after the claimant's receipt of its investigation [under Paragraph (A)(1) ], it need not consider a violation that is raised for the first time after the [two-year] statute of limitations has expired").

And most recently, in *State ex rel. Oliver v. Southeastern Erectors, Inc.* (1996), 76 Ohio St.3d 26, 665 N.E.2d 1108, we implicitly found a claimant's amendment to his VSSR application timely, even though he had filed it more than thirty days after his receipt of the commission's investigation report. See *[State ex rel.] Oliver v. Southeastern Erectors* (June 23, 1994), Franklin App. No. 93APD04–597, unreported. The commission maintained in *Oliver* that the claimant's amendment was untimely under Paragraph (A)(1), but we did not specifically dispose of this argument due to our finding that the claimant's amendment charged a VSSR that either was similar to or referred to the VSSRs cited in his application. We were satisfied that these references and similarities provided sufficient notice to the employer of the added VSSR. *Id.* at 28–29, 665 N.E.2d at 1111. Inherent in this finding is the conclusion that the amendment "merely clarified" the previously alleged violations, without "rais[ing] any unstated claim," within the meaning of Paragraph (A)(1).

Accordingly, we hold, based on *Dillon* and its progeny, that claimants may amend their VSSR applications to clarify prior charges regardless of commission amendment deadlines or statutes of limitations. We therefore reject Bauer's argument that McClellan's amendment is absolutely barred by the deadline in Ohio Adm.Code 4121–3–20(A)(1).

Bauer also argues that McClellan's amendment alleges a previously unstated claim, not merely a clarification. Bauer insists that the reference in Ohio Adm.Code 4121:1–3–09(F)(1) to the safety belts and lifelines as alternative safety measures is not enough to put an employer on notice of an additional VSSR under 4121:1–3–03(J)(1). *Oliver, supra,* specifically dispenses with this argument.

In *Oliver*, the claimant also alleged in his application a violation of Ohio Adm.Code 4121:1–3–09(F)(1), among other rules, and later attempted to amend with a violation of Ohio Adm.Code 4121:1–3–03(J)(1). As mentioned, we found that the specific safety requirements cited in the application either referred or were conceptually similar to Ohio Adm.Code 4121:1–3–03(J)(1) and, therefore, that the amendment was permissible. We concluded:

"[T]he omitted and cited provisions are sufficiently related so as to adequately apprise the parties of a potential violation of Ohio Adm.Code 4121:1–3–03(J)(1) as well. Accordingly, Ohio Adm.Code 4121:1–3–03(J)(1) should be treated as having been raised initially." *Id.*, 76 Ohio St.3d at 28–29, 665 N.E.2d at 1111.

On this authority, we find McClellan's amendment acceptable as a clarification under Ohio Adm.Code 4121–3–20(A)(1).

### Catch–Platform Requirement as Applying to Gutter Removal

Bauer next argues that "roofing," for the purpose of Ohio Adm.Code 4121:1–3–09(F)(1), does not include gutter repair. We reject this argument for the same reason the court of appeals did.

Ohio Adm.Code Chapter 4121:1–3 covers construction work, which is defined in Ohio Adm.Code 4121:1–3–01(A):

"Activities within the scope of this code, generally referred to herein as 'construction,' include the demolition, dismantling, excavation, construction, erection, alteration, repair * * * of buildings and other structures.

"This code covers construction activities of employees whose employer engages in such work as its principal business. It also covers employees of other employers when the activities are performed in the course of new construction or substantial reconstruction of all or part of an existing structure, as well as substantial demolition or razing of an existing structure, but does not cover employees of such other employers when the activities are performed in the ordinary course of maintenance work."

Ohio Adm.Code 4121:1–3–09, titled "Roofing Devices," provides with respect to pitched and flat roofs:

"(F)(1) Catch platforms for pitched roofs.

"On pitched roofs with a rise of four inches in twelve or greater, sixteen feet or more above ground, and not having a parapet of at least thirty inches in height, catch platforms shall be installed. The platform shall extend two feet beyond the projection of the eaves and shall be provided with a standard guardrail substantially fixed in place. Safety belts attached to a lifeline which is securely fastened to the structure may be used in lieu of a catch platform.

"(2) For flat roofs.

"On flat roofs, not having a parapet of at least thirty inches in height, a standard guardrail substantially fixed in place may be used. Safety belts attached to a lifeline which is securely fastened to the structure may be used in lieu of a standard guardrail."

Contrary to Bauer's argument, Ohio Adm.Code 4121:1–3–09 nowhere limits the scope of these provisions to actual roof-laying activity. Cf. *State ex rel. Sorrells v. Mosier Tree Serv.* (1982), 69 Ohio St.2d 341, 23 O.O.3d 312, 432 N.E.2d 197 (former safety code chapter regulating electrical equipment limited scope of rules to electrical utility industry). The rule instead refers to roofs of certain dimensions as "devices," treating them just as it does the other roofing-related "devices" for which it provides, *i.e.,* buckets for handling hot tar, pitch or asphalt; felt-laying machines and mechanical moppers; roofing brackets; kettles and tankers; chicken ladders and crawling boards. Ohio Adm.Code 4121:1–3–09(C) through (H). Absent such restriction, the scope of Ohio Adm.Code 4121:1–3–09 is limited to the construction activity defined in Ohio Adm.Code 4121:1–3–01(A).

Thus, Ohio Adm.Code 4121:1–3–09 operates to protect any construction employee who works with pitched roofs, flat roofs, or any other roofing device mentioned in the rule, and who is injured due to an employer's failure to comply with the duties imposed. While doing construction work on a roof of the dimensions specified in Ohio Adm.Code 4121:1–3–09(F)(1), McClellan fell and was injured because the roof had no catch platform or other permissible safety measures. Bauer is therefore susceptible to liability for this VSSR.

### Rehearing

But Bauer alternately argues that even if Ohio Adm.Code 4121:1–3–09(F)(1) applied to McClellan's injury, the commission still abused its discretion in granting rehearing of the initial order exonerating Bauer of this particular VSSR. We agree that Bauer cannot be held liable for violating this safety requirement.

The court of appeals implied, by adopting the referee's report, that McClellan's affidavit did not constitute new and additional proof for the purpose of the rehearing standard in Ohio Adm.Code 4121–3–20(G)(1)(a). See *State ex rel. Lovell v. Indus. Comm.* (1996), 74 Ohio St.3d 250, 253, 658 N.E.2d 284, 287 (commission did not abuse its discretion in denying rehearing based on claimant's offer to testify in person, as compared to his already admitted deposition testimony). However, the court did not find an abuse of discretion for that reason. The court instead declared the commission's initial interpretation of the catch-platform requirement an "obvious mistake of law" for which a writ of mandamus would have to issue anyway.

This finding overlooks the real mistake of law that undermines the commission's and court of appeals' decisions in this cause—their combined failure to

recognize that the catch-platform and the safety-belt/lifeline requirements are *alternative* safety measures and cannot be applied simultaneously. Again, Ohio Adm.Code 4121:1–3–09(F)(1) provides for the use of lifelines and safety belts "in lieu of" a catch platform. Therefore, by the express terms of this rule, and as acknowledged in the bureau's construction safety analysis, Bauer had no duty to provide both the specified safety belt/lifeline *and* a catch platform to protect McClellan. Cf. *State ex rel. Maghie & Savage, Inc. v. Nobel* (1998), 81 Ohio St.3d 328, 331, 691 N.E.2d 277, 279 (presence of equivalent means of protection may excuse compliance with specific safety requirement). Accordingly, the commission cannot hold Bauer accountable for both violations at the same time or assess a combined VSSR penalty against Bauer.

Having found that the commission abused its discretion only in granting rehearing and assessing a violation of Ohio Adm.Code 4121:1–3–09(F)(1), we further find that the court of appeals erred in confirming that assessment. Accordingly, we reverse the court of appeals' judgment to this extent and order that the commission redetermine Bauer's VSSR penalty premised only upon the violation of Ohio Adm.Code 4121:1–3–03(J)(1).

*Judgment reversed in part*
*and affirmed in part.*

MOYER, C.J., PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., dissent.