THE STATE EX REL. PARKS, APPELLANT, *v.* INDUSTRIAL
COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Parks v. Indus. Comm.* (1999), 85 Ohio St.3d 22.]

(No. 95–2376—Submitted December 16, 1998—Decided March 17, 1999.)

---

*Gallon & Takacs Co., L.P.A., Theodore A. Bowman* and *Michael J. Niedzielski,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Cheryl J. Nester,* Assistant Attorney General, for appellee Industrial Commission.

*Edward M. Yosses,* Acting Law Director, and *Lourdes Santiago,* Senior Attorney, for appellee city of Toledo.

---

LUNDBERG STRATTON, J. Appellant Parks contends that the city violated Ohio Adm.Code 4121:1–5–23(E)(1) and (2), regulations for "electric utility and clearance tree-trimming industries." [1] These are specific safety regulations for acts

---

1. Ohio Adm.Code 4121:1–5–23 provides, in part:

"(A) Unless the electrical conductors or equipment to be worked on are isolated from all possible sources of voltage or are effectively grounded, the employer shall provide protective equipment approved for the voltage involved, such as rubber gloves with protectors, rubber sleeves, hot line tools, line hose, line guards, insulator hoods, blankets, and access·boards. Employees shall be

that cannot practicably be performed indoors. In applying "workshop and factory" safeguards in other cases, this court has implied that Ohio Adm.Code Chapter 4121:1–5 governs only indoor activities. The issue before us in this case is whether the protections afforded by Ohio Adm.Code 4121:1–5–23(E)(1) and (2) also extend to outdoor industrial injury. For the reasons that follow, we hold that the utility/tree-trimming protections in Ohio Adm.Code 4121:1–5–23(E)(1) and (2) apply to Parks's outdoor injury.

The court of appeals held that Parks's injury was outside the scope of this rule because his injury did not occur in a "workshop or factory" as required by Ohio Adm.Code 4121:1–5–01(A). The court relied upon prior cases where we have held that, at a minimum, employees must be *within* a room or place to be safeguarded against the VSSRs listed in Ohio Adm.Code Chapter 4121:1–5. *State ex rel. Waugh v. Indus. Comm.* (1997), 77 Ohio St.3d 453, 674 N.E.2d 1385; *State ex rel. Buurma Farms, Inc. v. Indus. Comm.* (1994), 69 Ohio St.3d 111, 630 N.E.2d 686; *State ex rel. Double v. Indus. Comm.* (1992), 65 Ohio St.3d 13, 599 N.E.2d 259.

In *Buurma Farms,* the claimant was injured while operating a conveyor, for which cited safety requirements specifically demanded accessible shutoff switches and safety guards. The conveyor might have been operated outdoors, but it was not. More important for this case, the conveyor did not *have* to be operated outdoors. Thus, because the claimant was injured in a building that could reasonably be considered a workshop, we held the employer liable for the asserted VSSRs. *Buurma,* 69 Ohio St.3d at 113, 630 N.E.2d at 687.

Similarly, in *Waugh,* the specific safety requirement demanded protective footgear and applied indiscriminately to "foot hazards." *Waugh,* 77 Ohio St.3d at 453, 674 N.E.2d at 1386. Hazardous foot conditions can occur indoors or outdoors. Thus, when the claimant in *Waugh* severed some toes while lawn mowing, we held that his employer had no notice, given the "workshop or

---

instructed in the use of such tools and equipment and, when working on or when working within contact distance of an energized conductor, shall use such tools and equipment.

"* * * *

"(E) [Regarding] [a]pproach distances to exposed energized conductors and equipment.

"(1) The requirements of this paragraph apply only to the electric utility and clearance tree-trimming industries.

"(2) No employee shall be required to approach or take any conductive object closer to any electrically energized power conductors and equipment than prescribed in table 4121:1–5–23(E) to this rule unless:

"(a) The employee is insulated or guarded from the energized parts (insulating gloves rated for the voltage involved shall be considered adequate insulation); or

"(b) The energized parts are insulated or guarded from the employee and any other conductive object at a different potential; or

"(c) The power conductors and equipment are deenergized and grounded."

factory" limitation, that Ohio Adm.Code Chapter 4121:1–5 required protective footgear for indoor *and* outdoor foot hazards. Accordingly, we refused to find VSSR liability. *Waugh,* 77 Ohio St.3d at 456, 674 N.E.2d at 1388.

The commission has discretion to interpret its own rules; however, common sense must prevail where the application of those rules gives rise to a patently illogical result. *State ex rel. Lamp v. J.A. Croson Co.* (1996), 75 Ohio St.3d 77, 78–79, 661 N.E.2d 724, 726. The risk presented by the combination of clearing tree limbs in the vicinity of power lines rarely, if ever, occurs indoors. Thus, imposing the general "workshop or factory" limitation on the rule regulating this activity would essentially eliminate the application of the entire provision.

The court of appeals recognized this dilemma but determined that it lacked judicial authority to extend Ohio Adm.Code 4121:1–5–23(E) to Parks. However, Parks argues that the special requirements of Ohio Adm.Code 4121:1–5–23(E) prevail as an exception to the general terms of Ohio Adm.Code 4121:1–5–01(A). We agree.

"The [commission's] rules for specific safety requirements have the effect of legislative enactments" and therefore are "subject to the ordinary rules of statutory construction." *State ex rel. Miller Plumbing Co. v. Indus. Comm.* (1948), 149 Ohio St. 493, 496–497, 37 O.O. 197, 199, 79 N.E.2d 553, 555; *State ex rel. R. Bauer & Sons Roofing & Siding, Inc. v. Indus. Comm.* (1998), 84 Ohio St.3d 62, 66, 701 N.E.2d 995, 999. See, also, *Johnson's Markets, Inc. v. New Carlisle Dept. of Health* (1991), 58 Ohio St.3d 28, 36–37, 567 N.E.2d 1018, 1025–1026 (R.C. 1.51 used to settle the meaning of conflicting administrative regulations). R.C. 1.51 provides:

"If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."

Ohio Adm.Code 4121:1–5–23, a more specialized regulation, specifies precautions for precise vocational acts, whereas Ohio Adm.Code 4121:1–5–01(A) describes general principles for applying specific requirements. Moreover, Ohio Adm.Code 4121:1–5–01(A) contains no indication of an intent that it should prevail over Ohio Adm.Code 4121:1–5–23, regardless of which is the more recently adopted rule. The drafters could have inserted the word "only" to establish that the chapter applied exclusively to "all workshops and factories subject to the Workers' Compensation Act." They did not. Thus, activities that are regulated in Ohio Adm.Code 4121:1–5–23(E) and are obviously conducted outdoors must be considered an exception to the rule that Ohio Adm.Code Chapter 4121:1–5 protects activities occurring indoors in workshops or factories.

With this construction of the rule, we can reconcile today's decision with *Buurma Farms* and *Waugh,* the cases that are most analogous, despite having reached the opposite result. *Buurma Farms* and *Waugh* establish that, where specific safety requirements regulate activities that can be performed indoors or outdoors, the Ohio Adm.Code 4121:1–5–01(A) workshops and factories restriction limits an employer's reasonable expectations of liability to VSSRs that are committed indoors. However, the rule must be different where activity is regulated but cannot be performed indoors. In that case, the employer cannot reasonably expect exemption because Ohio Adm.Code 4121:1–5–01(A) does not apply *exclusively* to workshops and factories.

The city and commission also argue that the city is not a member of the "clearance tree-trimming industr[y]" under Ohio Adm.Code 4121:1–5–23(E)(1) and that neither paragraph (E)(1) nor (E)(2) was designed to regulate a municipality's tree-trimming activities. We disagree.

Historically, municipal corporations were held to the same safety standards as employers in private corporations engaged in the same industry. *State ex rel. Post v. Indus. Comm.* (1933), 127 Ohio St. 187, 187 N.E. 719, syllabus. Thus, in *State ex rel. Sorrells v. Mosier Tree Serv.* (1982), 69 Ohio St.2d 341, 23 O.O.3d 312, 432 N.E.2d 197, we held that the safety requirements aimed at the "electric utility industry" did not extend to a tree trimmer killed while trimming around a power line.

The city and commission cite *Sorrells* to establish that Parks is not covered by tree-trimming regulations. However, the safety regulation purportedly violated in *Sorrells,* former Ohio Adm.Code 4121:1–19–02, required appropriate safety gear for the electric utility industry only; it did not also expressly apply to the tree-trimming industry as does Ohio Adm.Code 4121:1–5–23(E). *Id.* at 343, 23 O.O.3d at 313, 432 N.E.2d at 198–199; *Sorrells v. Mosier Tree Serv.* (Mar. 26, 1981), Franklin App. No. 80AP–609, unreported, 1981 WL 3077. In fact, after *Sorrells,* the cited safety requirements were repealed and reenacted in the expanded scope of Ohio Adm.Code 4121:1–5–23. 1985–1986 Ohio Monthly Record 66 and 73.

Similarly, the safety requirements for construction purportedly violated in *State ex rel. Kilburn v. Indus. Comm.* (1982), 1 Ohio St.3d 103, 1 OBR 137, 438 N.E.2d 422, also cited by the city and commission, have been superseded by Ohio Adm.Code 4121:1–3–01 *et seq.* Thus, the specific safety requirements for construction activities no longer restrict application of those rules to situations where construction is the employer's principal business. 1979–1980 Ohio Monthly Record 4–23. Thus, the reasons asserted by the city and commission to exempt municipalities from the instant specific safety requirements are not only inapplicable, they no longer exist.

The city and commission also contend that, even if Ohio Adm.Code 4121:1–5–23(E) were to govern outdoor tree trimming, paragraph (G) of that rule exempts Toledo because Parks was riding an "insulated vehicle-mounted elevating and rotating work platfor[m]." The commission made no such finding, and for us to do so ignores that VSSRs are factual questions to be determined exclusively by the commission. *State ex rel. Burton v. Indus. Comm.* (1989), 46 Ohio St.3d 170, 171, 545 N.E.2d 1216, 1218.

Consequently, we reverse the court of appeals' judgment. A writ of mandamus vacating the commission's denial of Parks's VSSR application is granted, and this cause is returned to the commission for further review consistent with our decision.

*Judgment reversed*
*and writ granted.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.