[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 525.]

THE STATE EX REL. HIGHFILL, APPELLEE, *v.* INDUSTRIAL COMMISSION OF

OHIO; LEMASTER STEEL ERECTORS, INC., APPELLANT.

[Cite as *State ex rel. Highfill v. Indus. Comm*., 2001-Ohio-1275.]

*Workers' compensation—Mandamus sought to vacate Industrial Commission's*
*order finding steel frame construction company not in violation of specific*
*safety requirement, Ohio Adm.Code 4121:1-3-03(J)(1)—Court of*
*appeals' grant of writ affirmed.*

(No. 00-1786—Submitted July 17, 2001—Decided August 15, 2001.)

APPEAL from the Court of Appeals for Franklin County, No. 99AP-709.

_____

*Per Curiam.*

{¶ 1} Appellant, LeMaster Steel Erectors, Inc., builds steel frame structures. In August 1996, LeMaster was constructing an addition to a building occupied by Envelope Converting Company in Mason, Ohio.

{¶ 2} At some point, a LeMaster crew began installing roof decking over the steel frame construction. It was a progressive operation using interlocking roof panels. Installing a panel involved several steps. Once those steps were completed, workers would move onto the newly installed panel and repeat the process with the next, continuing in this manner until the roof was finished.

{¶ 3} One of the steps involved the installation of end dams. An end dam is a piece of metal that directs water toward the gutter. While the record is somewhat unclear, an end dam is apparently attached to the drop-off edge of the roof or panel, known as the leading edge.

{¶ 4} On August 9, 1996, the roof was partially complete. On the back edge of the completed decking, a lifeline had been erected. It is undisputed that there was no lifeline on either the leading edge or the high side of the building.

**{¶ 5}** Jeff T. Highfill was assigned that day to install end dams. What happened thereafter is unclear. Coworker David Brock testified that he and Highfill were talking near the leading edge of the roof. As Brock turned away to resume work, he "heard what sounded to [him] like metal being kicked or something being dropped on metal." When Brock turned around, Highfill was not there, having fallen to his death approximately twenty-eight feet below.

**{¶ 6}** Immediately upon discovering that Highfill had fallen and before he even proceeded down to check on the victim, Brock's foreman, Ronnie Creighton, instructed Brock to "put the safety [expletive] up now." Brock interpreted Creighton to be ordering the immediate installation of a lifeline. Feeling uncomfortable with the directive, Brock declined to comply. Other coworkers, however, obeyed the directive and were observed installing a lifeline by emergency workers arriving on the scene.

**{¶ 7}** After a workers' compensation death claim had been allowed, decedent's widow, Donna S. Highfill, appellee herein, filed an application with the Industrial Commission of Ohio for additional compensation, alleging that LeMaster had violated several specific safety requirements ("VSSRs"). Ultimately, however, the parties' primary focus was on Ohio Adm.Code 4121:1-3-03(J)(1), which required:

"Lifelines, safety belts and lanyards shall be provided by the employer and it shall be the responsibility of the employee to wear such equipment when * * * working on * * * steel frame construction * * * [or when] exposed to hazards of falling when the operation being performed is more than fifteen feet above ground."[1]

**{¶ 8}** Despite conflicting evidence, Mrs. Highfill did not dispute the assertion that decedent had been issued a safety belt and lanyard and was wearing

---

1. Ohio Adm.Code 4121:1-3-03(J)(1) was amended effective April 1, 1999. See 1998-1999 OMR 843, 846.

one or both when he fell. She instead emphasized the absence of a lifeline on the roof's leading edge. LeMaster responded with a reference to the definitions of the equipment mandated by Ohio Adm.Code 4121:1-3-03(J)(1), and proposed that a lanyard could act as a lifeline if it were attached to a substantial object. LeMaster then produced testimony that decedent could have wrapped his lanyard around an allegedly adjacent purlin—a steel beam that sits between the rafters—thereby providing fall protection equivalent to that demanded by the specific safety requirement. Mrs. Highfill countered with evidence as to both the occupational feasibility and hazard inherent in such a maneuver. As to the latter, all witnesses who were questioned on the subject agreed that in order for decedent to have "tied off" on a purlin, decedent, at a minimum, would have been required to lean out over the exposed or leading edge of the roof or purlin.

{¶ 9} The commission in a lengthy order found no VSSR, writing:

"At the time of decedent's fall he apparently was working near the front edge of the roof structure * * * and was attempting to secure a side molding/flashing to the leading edge of the roof structure. He then apparently lost his balance and fell head first over the front edge.

"At the time of decedent's fall he was wearing a safety belt or harness and lanyard. Safety cables or lines had been installed across the back, or low edge of the roof structure, and the left edge, but none had been strung across the front or high edge, from where the claimant fell.

" * * *

"The claimant's main argument is that the employer is in violation of Section 4121:1-3-03(J) for failure to provide a safety line or cable across the front or high edge of the roof structure, to which decedent could have tied off, and which would have prevented the decedent's fatal fall to the ground. The employer has argued that the decedent could have tied off to one of the purlins, or cross-beams, immediately to his left as he was attempting to secure side molding/flashing,

otherwise known as end dams, to the end of the decking on the high side of the roof, and that this fact coupled with the fact that the employer had provided the decedent with a safety belt and lanyard, which he was wearing, was sufficient to satisfy the requirements of section 4121:1-3-03(J).

"The Staff Hearing Officer agrees with the employer's position in this regard. Reliance is placed on the hearing testimony of Mr. David Brock, and Mr. Joshua Haberstroh. Mr. Brock testified that the width of the purlin or cross-beam was about six inches (Page 104 of transcript) and Mr. Haberstroh testified that the width was about three to four inches (page 66). Therefore, it is found that the width of the purlin or cross-beam was between three to six inches, which is found to be small enough for a worker to have wrapped their [*sic*] lanyard around and be able to work on the edge of the decking. Per Mr. Brock and Haberstroh's testimony the lanyards were a standard six feet in length. Mr. Brock also testified that the decedent would have been kneeling while attempting to install the end dams (page 120), and that the decedent was actually wearing knee pads at the time of his fall. Both Mr. Brock and Haberstroh testified that someone could have 'tied off' by wrapping their [*sic*] lanyard around a purlin in order to install end dams. (Brock pages 114, 121 to 124; Haberstroh pages 168 to 170, 176 to 177, 183). Mr. Haberstroh testified that he had tied off in such a manner in the past, and Mr. Brock testified that he had tied off to column beams in the same manner in the past (page 106).

"Therefore, it is found that the above testimony supports a finding that the employer had provided sufficient safety equipment to have enabled the decedent to have tied off while performing the work which he was doing as of the time of his fall, that the employer was in compliance with section 4121:1-3-03(J), and that had the decedent tied off to a purlin with his lanyard and safety belt while doing such work he would not have sustained the fatal fall to the ground below. In making this finding the Staff Hearing Officer relies on the recent case of [*State ex rel.*] *Maghie*

*& Savage, Inc. v. Nobel* (1998), 81 Ohio St.3d 328 [691 N.E.2d 277], wherein the Court made reference to the presence of an equivalent means of protection, as being sufficient to satisfy a safety requirement. The ability to tie off by wrapping a lanyard around a purlin is found to be an 'equivalent means of protection,' sufficient to satisfy the requirements of the cited code section in this case. This decision was also made in reliance upon the rule of [*State ex rel.*] *Watson v. Indus. Comm.* (1986), 29 Ohio App.3d 354 [29 OBR 483, 505 N.E.2d 1015], which held that safety code requirements must be strictly construed in favor of employers."

{¶ 10} Rehearing was denied.

{¶ 11} The Court of Appeals for Franklin County, on Mrs. Highfill's petition in mandamus, issued a writ vacating the commission's order and granting an award. The court held that Ohio Adm.Code 4121:1-3-03(J)(1) "[d]oes not provide for alternate means of protection, but mandates the provision and use of lifelines, safety belts or harnesses and lanyards. To the extent there might be an equivalent, the equivalent is found in Ohio Adm.Code 4121:1-3-03(L), which provides for the use of safety nets when work places are more than twenty-five feet above surfaces but only when the use of other safety devices, such as safety line or belts, is impractical."

{¶ 12} This cause is now before this court upon an appeal as of right.

{¶ 13} Our recent decision in *State ex rel. Avalotis Painting Co. v. Indus. Comm.* (2001), 91 Ohio St.3d 137, 742 N.E.2d 1124, applies reasoning markedly similar to that used by the court below. In *Avalotis Painting*, the employer had not provided a lifeline in the area that claimant was assigned to paint, and claimant fell. Upholding the commission's VSSR finding, we held that a safety belt, lanyard, and lifeline were three separate and distinct items of equipment and specifically distinguished a lifeline from either a lanyard or a safety belt. We also rejected the assertion that tying off to a beam was an acceptable substitute for the lifeline mandated by Ohio Adm.Code 4121:1-3-03(J)(1). Therefore, the purported

availability of an adjacent purlin in this case did not relieve LeMaster of its responsibility to provide a lifeline as directed by the relevant specific safety requirement.

{¶ 14} The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

────────────────

*Ronald D. Major*, for appellee.

*Coolidge, Wall, Womsley & Lombard Co., L.P.A., Nicholas E. Davis, Jr.,* and *Timothy G. Pepper*, for appellant.

────────────────