DECISION
Relator, city of Bellaire, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that granted an additional award for a violation of a specific safety requirement and to enter an order denying such an award.
This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided the requested writ of mandamus should be granted. No objections have been filed to the magistrate's decision.
Upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's decision as its own, as we find there is no error of law or other defect on the face of the decision. Therefore, the requested writ of mandamus is granted to order respondent, Industrial Commission of Ohio, to vacate its order that granted a VSSR award to respondent, Anita Smigill, and to enter an order denying the VSSR application.
Writ of mandamus granted.
BROWN and KLATT, JJ., concur.
 IN MANDAMUS
In this original action, relator, city of Bellaire, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting an additional award for an alleged violation of a specific safety requirement ("VSSR") and to enter an order denying a VSSR award.
Findings of Fact:
1. On June 5, 1998, Anita M. Smigill ("claimant') sustained an industrial injury while employed by relator. While mowing grass in Bellaire City Park, claimant stepped back onto a hole covering that tipped, causing her to fall and sustain an industrial injury.
2. The industrial claim is allowed for "unspecified contusion right shoulder; right rotator cuff tear" and is assigned claim No. 98-420940.
3. On April 18, 2000, claimant filed a VSSR application. On her application, she claimed that relator had violated several provisions of the Ohio Administrative Code. However, claimant did not cite a violation of any provision contained in Chapter 4121:1-5, which is captioned "Specific Safety Requirements for Workshops and Factories."
4. The VSSR application prompted the Ohio Bureau of Workers' Compensation ("bureau") to conduct an investigation of the accident. The bureau's special investigator took an affidavit from claimant stating in part:
 * * * On the day of the accident I was mowing grass at the City Park. I was mowing under some hedges and I stepped back. There was a sewer lid or manhole cover that was over a hole. The sewer lid or cover was not large enough to cover the entire hole. As I stepped back onto the lid or cover, the lid or cover tilted to one side. I tried to catch my balance with my right foot, but I fell on my right forearm and elbow and twisted my right foot. I also injured by right wrist, neck and right shoulder.
5. The bureau's special investigator conducted an on-site investigation of the accident on July 19, 2000. According to his report, the investigator took seven photographs of the area where the accident occurred. Those photographs are reproduced for the record in this action.
6. Following a March 19, 2001 hearing, a staff hearing officer ("SHO") issued an order granting a VSSR award for a violation of Ohio Adm. Code4121:1-5-02(C)(1)(a)(i), a code section not cited by claimant on her VSSR application. The SHO also found that the code sections cited by claimant were inapplicable. The SHO's order states in part:
 * * * [C]ase law indicates that as long as the application sets forth the facts, which form the basis of the alleged violation, it will satisfy the rule of sufficiently notifying the employer of the alleged violation of a specific safety requirement. See State ex rel. _Bailey v. Indus. Comm. (1986), 23 Ohio St.3d 53
and Fulton's Treatise on Ohio Workers' Compensation Law at page 369. In this case, the claimant has provided such a detailed description. Therefore, the Staff Hearing Officer will entertain the most logical and applicable section(s).
 However, before doing so, the Staff Hearing Officer must consider the applicability of the workshops and factories code to this injury. Of course, this incident occurred outside. The Staff Hearing Officer notes the applicability of the scope provision of O.A.C. 4121:1-5-01(A) as well as the case law of Buurma Farms and Waugh, which have generally restricted VSSR liability to indoor activities. However, the case of State ex rel. Parks v. Indus. _Comm. (1999), 85 Ohio St.3d 22, now indicates that where activities that can be performed indoors or outdoors only carry liability for those performed indoors, the rule must be different where the activity is regulated but cannot be performed indoors. In that case, the employer cannot reasonably expect exemption as the rule could only apply to outdoor activities. In this case, while the code section could apply to both indoor or outdoor holes, the activity claimant was performing at the time of her injury, cutting the grass, is found to be exclusively an outdoor activity.
 Furthermore, the general intent of the VSSR provisions is to provide for the protection of the lives, health, or safety of employees as well as to promote reasonable (not absolute) safety for employees. See State ex rel. Jeep Corp. v. Indus. Comm. (1989), 42 Ohio St.3d 83 and Fulton's Treatise on Ohio Workers' Compensation Law at page 366. Additionally, while the Industrial Commission has the discretion to interpret its own rules, if its interpretation gives rise to a patently illogical result, "common sense should prevail." See State ex rel. Harris v. Indus. Comm. (1984), 12 Ohio St.3d 152 and Fulton's Treatise on Workers' Compensation Law at page 369. In this case, any reasonable person could only conclude that an unsecured hole cover would not provide the reasonable safety of preventing someone from falling into the hole it was covering and for which it was intended for anyone who came in contact with it.
 The only specific safety requirement that the Staff Hearing Officer can logically and potentially apply is O.A.C. 4121:1-5-02(C)(1)(a)(i), which states:
 Floor openings, not including hoistway openings, shall be guarded with standard railing or with fixed safety covers with flush hinges.
 A floor opening is defined in O.A.C. 4121:1-5-01(B)(56), which states:
 "Floor opening": an opening measuring twelve inches or more in its least dimension, in any floor, platform, pavement, or yard.
 The Staff Hearing Officer finds this to be the only appropriate code section to consider based on photographs #6 and 7 as contained in the Bureau of Workers' Compensation investigation report, dated 07/24/2000. These photographs document that the hole in question was approximately 36 inches deep and had a circumference of 20 inches. The hole was located in the grassy area several feet from a fountain in a municipal park. It appears from the photographs to be flush to the surrounding surface and not paved over. It now contains four legs/clips that have been welded to the underside of the manhole cover to hold it in place. This is supported by the photographs of the Bureau of Workers' Compensation investigator and as per the mayor's letter, dated 07/29/1999. However, these legs/clips were not on the cover on the date of injury as documented by the photographs submitted by the claimant, dated 06/06/1998, and as found in exhibit #9 of the Bureau of Workers' Compensation investigation report. Additionally, the affidavits of Mildred Homko, Ralph E. Schockey, and Stanton Keller, Jr. support the contention that the legs/clips were not on the cover on the date of the injury and that it was rather easy to tip the cover off the hole when something came in contact with the cover.
 The term yard is not defined within the code, however, one of the definitions as provided by Webster's Dictionary is "an area set aside for a particular business or activity." Here, the park is such an entity which is owned, controlled and maintained by the city for the benefit of its citizens. In fact, the claimant was performing maintenance activity for her employer at the time of the injury. Historically, municipal corporations were held to the same safety standards as employers in private corporations engaged in the same industry. See State ex rel. Post v. Indus. Comm. (1933), 127 Ohio St. 187. Therefore, the Staff Hearing Officer finds that the code section applies to this incident based on the activity being performed at the time of the incident.
 Therefore, it is the finding of the Staff Hearing Officer that the manhole cover was not secured or fixed over the floor opening as is required by the safety requirement. Furthermore, it was the lack of securing the cover to the hole that was, in fact, the proximate cause of the claimant's injury in this claim. Therefore, the claimant's application is granted to the extent of this order.
7. Relator moved for rehearing pursuant to Ohio Adm. Code 4121-3-20(G). In support of her hearing relator submitted an affidavit from William Schram stating:
 * * * [O]n or about June 5, 1998, I was the Service Director for the City of Bellaire. I am familiar with the manhole cover located in the lawn of the City Park in Bellaire where Anita Smigill fell.
 It never crossed my mind that the lawn of the City Park could be considered to be a floor or that the manhole cover in the lawn of the City Park could be considered to be a floor opening.
8. On June 7, 2001, another SHO mailed an order denying rehearing. The order states:
 * * * The Employer has not submitted any new and relevant evidence nor has the employer shown that the order of 03/19/2001 was based on an obvious mistake of fact.
 Specifically, counsel for the employer in the motion for Rehearing makes legal arguments, and has attached an affidavit from the Service Director for the employer. However, an alleged mistake of law is not a basis to grant a rehearing, and the affidavit does not constitute "new and relevant" evidence, because the Service Director only indicates that it never crossed his mind that a manhole cover in a lawn in a city park could be considered a "floor opening."
 As the requirements of I.C. Rule 4121-3-20(G)(1)(a) or (b) have not been met, the request for a VSSR rehearing must be denied.
9. On August 27, 2001, relator, city of Bellaire, filed this mandamus action.
Conclusions of Law:
For the reasons set forth below, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its VSSR award.
Ohio Adm. Code Chapter 4121:1-5 is captioned "Specific Safety Requirements for Workshops and Factories." Ohio Adm. Code 4121:1-5-01 is captioned "Scope and definitions." Ohio Adm. Code 4121:1-5-01(A) is captioned "Scope" and states in part:
 The specific requirements of this chapter are requirements upon an employer for the protection of such employer's employees and no others and apply to all workshops and factories subject to the Workers' Compensation Act[.] * * *
Ohio Adm. Code 4121:1-5-01(B) is captioned "Definitions." Ohio Adm. Code4121-5-01(B)(56) states:
 * * * "Floor opening": an opening measuring twelve inches or more in its least dimension, in any floor, platform, pavement, or yard.
Ohio Adm. Code 4121:1-5-02 is captioned "Guarding floor and wall openings and holes." Ohio Adm. Code 4121:1-5-02(A) is captioned "Scope," and states:
 This rule covers the guarding of floor and wall openings and holes. It shall not apply to industrial grating holes nor to the working face of floor openings which are occupied by elevators, dumbwaiters, conveyors, machinery, piping or containers; the loading and unloading areas of automotive truck and railroad docks, or platforms, scaffolds, pits and trenches which are occupied for the purpose of providing access to a product, facility or process equipment while being worked upon.
Ohio Adm. Code 4121:1-5-02(C)(1)(a)(i) states:
(C) Permanent openings — floor, wall and yard.
(1) Floor openings.
(a) Guarding.
 (i) Floor openings, not including hoistway openings, shall be guarded with standard railing or with fixed safety covers with flush hinges.
In State ex rel. Buurma Farms, Inc. v. Indus. Comm. (1994),69 Ohio St.3d 111, the claimant severely injured her right hand while moving vegetables from a tank to a conveyor belt when the conveyor's unguarded drive belt caught her jacket. Finding Chapter 4121:1-5 violations, the commission found that claimant had been injured in a workshop located on the farm. In upholding the commission's decision, the Buurma Farms' court states:
 "Workshop" has not been defined statutorily, administratively or judicially by this court. As such, it must "be read in context and construed according to the rules of grammar and common usage." R.C. 1.42 and 1.41. Black's Law Dictionary (4 Ed.Rev. 1968) 1781, defines "workshop":
 "Within Workmen's Compensation Acts, a room or place wherein power-driven machinery is employed and manual labor is exercised by way of trade for gain or otherwise."
 Appellant does not dispute that claimant worked in a room where power-driven machinery was used and manual labor was "exercised by way of trade for gain * * *." The commission, therefore, properly found that claimant was injured in a workshop.
In State ex rel. Waugh v. Indus. Comm. (1997), 77 Ohio St.3d 453, while cutting grass on the grounds of the Elyria Waste Water Treatment Facility, the claimant, (Waugh) ran the lawnmower over his right foot, severing two toes. Waugh was not wearing hard toe shoes or protective footgear at the time of his injury. He filed a VSSR claim alleging an employer violation of Chapter 4121:1-5. The commission denied the VSSR on grounds that the injury did not occur in a workshop. Relying in part on its previous decision in Buurma Farms, the Waugh court upheld the commission's decision. The Waugh court reasoned:
 As the court of appeals observed, we have defined "workshop" as "`a room or place wherein power-driven machinery is employed and manual labor is exercised by way of trade for gain or otherwise'." Buurma Farms, supra. Waugh contends that Ohio Adm. Code Chapter 4121:1-5 also applies to workplaces without structural boundaries by seizing on the "room or place" language. Since this language is in the disjunctive, he argues that the definition transcends boundaries, extending to any place where the requisite machinery and labor are in use. This expansive interpretation makes sense, he insists, because other sections within the chapter, specifically Ohio Adm. Code 4121:1-5-28 (specific safety requirements for helicopter use) and 4121:1-5-29
(specific safety requirements for blasting operations), extend protections to activities commonly conducted outdoors.
 We disagree. Our definition refers to a place wherein the relevant power machinery and manual labor is employed, not whereat these activities occur. The court of appeals in State ex rel. York Temple Country Club, Inc. v. Indus. Comm. (Apr. 18, 1985), Franklin App. 84AP-818, unreported, recognized this small but significant distinction and, adopting its referee's reasoning, concurred that "the `shop' portion of `workshop' connotes some form of enclosure." The York court therefore concluded that a claimant's injury by an errant golf ball while working at a golf course driving range had not occurred in a workshop. We find this logic compelling, as is manifest from our decisions in Buurma Farms, Wiers Farms, and State ex rel. Double v. Indus. Comm. (1992), 65 Ohio St.3d 13, 599 N.E.2d 259
(construction site does not constitute a workshop).
 In the face of this logic, we cannot transform the accepted meaning of workshop to account for provisions in Ohio Adm. Code Chapter 4121:1-5 that seemingly regulate outdoor activity. Our admonition in Double at 16-17, 599 N.E.2d at 261, prevents any construction contrary to the reasonable expectations of employers[.]
The definition of workshop seems to have been expanded in State ex rel. Petrie v. Atlas Iron Processors (1999), 85 Ohio St.3d 372. In Petrie, the claimant was involved in sorting scrap metal within a fenced-in compound. On the date of injury, the claimant was assigned to remove ice and frozen debris from one of the scrapyard's conveyors. While performing this task, claimant caught his glove between the wheel and belt of the moving conveyor. Claimant's index finger was severed. The commission denied the VSSR application on grounds that Chapter 4121:1-5 did not apply. The Ohio Supreme Court in Petrie, issued a writ of mandamus, explaining:
 * * * Ohio Adm. Code Chapter 4121:1-5 covers "workshops and factories." Claimant proposes that the scrapyard's perimeter fencing was a structural enclosure sufficient to classify it as a "workshop" and render Ohio Adm. Code Chapter 4121:1-5 applicable. We agree.
 The fence, in this case, indeed set forth the boundaries of work activity. It also served to keep unauthorized nonemployees out, and, in so doing, established its confines as a place accessible only to employees for the purpose of carrying out the company's business.
One other case deserves review because it was heavily relied upon by the commission in this action. In State ex rel. Parks v. Indus. Comm. (1999), 85 Ohio St.3d 22, the court held that the protections afforded by Ohio Adm. Code 4121:1-5-23(E)(1) and (2) extend to outdoor industrial injury that did not occur in a workshop or factory.
In Parks, the claimant was employed as a "tree service worker" for the city of Toledo's Forestry Division when he received an electrical shock from a power line while trimming a storm damaged tree. At the time of his injury, claimant (Parks) was elevated in the bucket of a "high ranger truck" and was operating a chain saw. The commission denied the VSSR application on grounds that Parks was not injured in a workshop or factory.
As the Parks court points out, Ohio Adm. Code 4121:1-5-23(E), provides that the safety rules at issue apply only to the electric utility and clearance tree-trimming industries. In issuing a writ of mandamus to the commission, the Parks court explained:
 The risk presented by the combination of clearing tree limbs in the vicinity of power lines rarely, if ever, occurs indoors. Thus, imposing the general "workshop or factory" limitation on the rule regulating this activity would essentially eliminate the application of the entire provision.
 The court of appeals recognized this dilemma but determined that it lacked judicial authority to extend Ohio Adm. Code 4121:1-5-23(E) to Parks. However, Parks argues that the special requirements of Ohio Adm. Code 4121:1-5-23(E) prevail as an exception to the general terms of Ohio Adm. Code 4121:1-5-01(A). We agree.
 "The [commission's] rules for specific safety requirements have the effect of legislative enactments" and therefore are "subject to the ordinary rules of statutory construction." State ex rel. Miller Plumbing Co. v. Indus. Comm. (1948), 149 Ohio St. 493, 496-497, 37 O.O. 197, 199, 79 N.E.2d 553, 555; State ex rel. R. Bauer Sons Roofing Siding, Inc. v. Indus. Comm. (1998), 84 Ohio St.3d 62, 66, 701 N.E.2d 995, 999. See, also, Johnson's Markets, Inc. v. New Carlisle Dept. of Health (1991), 58 Ohio St.3d 28, 36-37, 567 N.E.2d 1018, 1025-1026 (R.C. 1.51 used to settle the meaning of conflicting administrative regulations). R.C. 1.51
provides:
 "If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."
 Ohio Adm. Code 4121:1-5-23, a more specialized regulation, specifies precautions for precise vocational acts, whereas Ohio Adm. Code 4121:1-5-01(A) describes general principles for applying specific requirements. Moreover, Ohio Adm. Code 4121:1-5-01(A) contains no indication of an intent that it should prevail over Ohio Adm. Code 4121:1-5-23, regardless of which is the more recently adopted rule. The drafters could have inserted the word "only" to establish that the chapter applied exclusively to "all workshops and factories subject to the Workers' Compensation Act." They did not. Thus, activities that are regulated in Ohio Adm. Code 4121:1-5-23(E) and are obviously conducted outdoors must be considered an exception to the rule that Ohio Adm. Code Chapter 4121:1-5 protects activities occurring indoors in workshops or factories.
 With this construction of the rule, we can reconcile today's decision with Buurma Farms and Waugh, the cases that are most analogous, despite having reached the opposite result. Buurma Farms and Waugh establish that, where specific safety requirements regulate activities that can be performed indoors or outdoors, the Ohio Adm. Code 4121:1-5-01(A) workshops and factories restriction limits an employer's reasonable expectations of liability to VSSRs that are committed indoors. However, the rule must be different where activity is regulated but cannot be performed indoors. In that case, the employer cannot reasonably expect exemption because Ohio Adm. Code 4121:1-5-01(A) does not apply exclusively to workshops and factories.
Turning to the instant case, and applying the expanded definition of workshop used in Petrie, supra, it is clear that there is no evidence in the record that could support a finding that the industrial injury occurred in a workshop or factory.
Claimant Anita Smigill was injured while mowing grass in a city park. While mowing, she stepped back onto a hole covering that tipped, causing her to fall and sustain her industrial injury.
There is no evidence that the area where claimant was mowing was fenced to set forth the boundaries of work activity, as was the case with the scrapyard in Petrie. There was no fence or marked boundary to keep unauthorized nonemployees out of the area where claimant was mowing grass in this case. In short, there is no evidence in the record upon which claimant could argue that she was injured in a workshop under the definition set forth in Petrie, supra.
Moreover, the commission misreads Parks in reaching its decision that Ohio Adm. Code 4121:1-5-02(C)(1)(a)(i) is applicable to claimant's injury. That code provision regulates work activity that brings the worker into contact with a floor opening. Such activity can be performed indoors or outdoors. Hence, under the reasoning of the Parks court, the Ohio Adm. Code 4121:1-5-1(A) "workshops and factory" restriction limits an employer's reasonable expectations of liability to VSSRs that are committed indoors.
In applying Parks to reach its conclusion, the commission's error is particularly apparent in the following portion of the SHO's order of March 19, 2001:
 In this case, while the code section could apply to both indoor or outdoor holes, the activity claimant was performing at the time of her injury, cutting the grass, is found to be exclusively an outdoor activity.
The flaw in the commission's reasoning in applying Parks is its reliance on the grass cutting activity. As previously noted, Ohio Adm. Code 4121:1-5-02(C)(1)(a)(i), does not specifically regulate grass cutting activity.
If there were contained somewhere in Chapter 4121:1-5 a specific safety rule regulating the outdoor activity of grass mowing, there would be an argument under Parks that an injury resulting from a violation of such rule need not occur in a factory or workshop. However, that is not the scenario presented to this court in this action.
Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order granting a VSSR award to respondent Anita Smigill, and to enter an order denying the VSSR application.