DECISION
{¶ 1} Relator, Cheryl Thieman, widow of David J. Thieman, has filed this original action requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her application for respondent Asplundh Expert Tree Company's violation of a specific safety requirement ("VSSR"), and to issue an order granting the requested VSSR award.
{¶ 2} The matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that the commission did not abuse its discretion in denying the VSSR award. Relator has filed objections to the magistrate's decision. The matter is now before this court for independent review.
{¶ 3} In her objections, relator reargues issues adequately addressed in the magistrate's decision. For the reasons set forth in the magistrate's decision, relator's objections are overruled.
{¶ 4} Following independent review, pursuant to Civ.R. 53, this court finds that the magistrate has properly determined the pertinent facts and applied the salient law to those facts. Accordingly, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. Therefore, the requested writ of mandamus is denied.
Objections overruled; writ denied.
BROWN and DESHLER, JJ., concur.
 APPENDIX A IN MANDAMUS
{¶ 5} Relator, Cheryl Thieman, as the widow of David J. Thieman, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her application for an additional award for respondent Asplundh Expert Tree Company's violation of a specific safety requirement ("VSSR"), and to issue an order granting the requested VSSR award.
Findings of Fact:
{¶ 6} On April 30, 1993, David J. Thieman, decedent, died when he was electrocuted after coming in contact with "hot" wires while trimming trees for respondent Asplundh Expert Tree Company ("employer").
{¶ 7} Decedent died in the course of and arising out of his employment. Decedent was working as the foreman of a crew doing clearance tree trimming in the Sleepy Hollow subdivision of Sylvania, Ohio. Decedent was in a tree, cutting a branch, when the branch came in contact with a 7,200 volt electric power line. Decedent touched the branch and died.
{¶ 8} OSHA investigated decedent's death and the record contains numerous affidavits taken from employees with whom decedent was working that day. The record also contains the employer's safety manual and excerpts from several weekly safety meetings wherein the employer continually taught its employees how to safely perform their job.
{¶ 9} Of particular relevance, the following statements are in the record:
{¶ 10} a. Statement number three is from the General Foreman who was supervising all the work that day and provides as follows:
 General Foreman stated that he was told by the deceased that there were bad trees in the area. [sic] (meaning that the tree limbs were growing up into the electrical lines) on 04/26/93 and that the power should be shut off. [The General Foreman] stated that he was waiting for the deceased to get back to him to tell him that he was ready to trim the tree so he could contact the power company to shut off the power. He stated that the deceased never did and the accident happened on 04/30/93.
{¶ 11} Also of relevance is statement number nine which was taken from a ground employee who, at the time of decedent's accident, had only been working for the employer for six weeks. That statement provides as follows:
 Ground man. Stated he had heard his foreman and the deceased discuss the willow tree and the power line the day before the accident. He stated that one of them (unknown whom) stated that the electrical power should be shut off before trimming. The day of the accident he was working with the deceased [and] as he started to climb the tree he ask[ed] him if he was going to have to electrical power shut off? The deceased STATED NO. Approx. 15 to 20 min. later he was electrocuted!
{¶ 12} OSHA concluded that the employer had not violated any OSHA regulations and that it was probable that the decedent had misjudged a hazardous situation.
{¶ 13} Relator filed a workers' compensation death claim which was allowed.
{¶ 14} On April 28, 1995, relator filed an application for an additional award for a VSSR alleging a violation of Ohio Adm. Code4121:1-5-23(E).
{¶ 15} Relator's application was originally denied on the basis that Ohio Adm. Code 4121:1-5-23(B) was inapplicable to the employer because the statute appears in the general section of the safety code entitled workshops and factories.
{¶ 16} In 1999, the Ohio Supreme Court decided State ex rel. Parks v. Indus. Comm. (1999), 85 Ohio St.3d 22, and held that Ohio Adm. Code 4121:1-5-01 did apply to work outside factories and workshops, including tree-trimming operations around utility lines.
{¶ 17} Relator filed a mandamus action in this court. This court issued a writ of mandamus ordering the commission to vacate its order denying relator's application for a VSSR on the basis that the code provision did not apply and to conduct further proceedings to determine whether a VSSR had occurred. [State ex rel.] Thieman v. Indus. Comm. (2000), Franklin App. No. 99AP-1170.
{¶ 18} On January 24, 2001, relator's application for an additional award for a VSSR came before a staff hearing officer ("SHO") who denied the application after concluding as follows:
 Due to a lack of evidence that the claimant was "required to approach closer or to take any conductive object closer to electrically energized power conductors and equipment than the minimum distances set forth in OAC 4121:1:5-25(E)," the VSSR application filed 4/28/95, must be denied.
{¶ 19} The SHO reached this decision after concluding that the employer was very safety-conscious and that employees of employer understood that they had the right to refuse to trim any tree that they felt was unsafe. (See pages 205-206.) Second, the SHO reviewed the circumstances leading up to the trimming of this particular tree and concluded that arrangements had been made for the electricity to be shut off in the area where this tree was located. However, for whatever reason, the decedent, as foremn of one crew, did not notify the general foreman that his crew was currently prepared to begin trimming the tree in question and the general foreman had not yet shut off the power. (See pages 206-207.)
{¶ 20} Relator's motion for rehearing was denied by order of the commission mailed May 26, 2001.
{¶ 21} Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
{¶ 22} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
{¶ 23} In order to establish a VSSR, an employee must prove: (1) that there exists an applicable and specific safety requirement in effect at the time of the injury; (2) that the employer failed to comply with the requirements; and (3) that the failure to comply was the cause of the injury in question. State ex rel. Trydle v. Indus. Comm. (1972),32 Ohio St.2d 257.
{¶ 24} In making a VSSR award, the commission must determine that a claimant's injury resulted from the employer's failure to comply with a specific safety requirement. Section 35, Article II, Ohio Constitution; State ex rel. Haines v. Indus. Comm. (1972), 29 Ohio St.2d 15. This is a factual determination, within the final jurisdiction of the commission, subject to correction in mandamus only upon a showing of an abuse of discretion. State ex rel. Allied Wheel Products, Inc. v. Indus. Comm. (1956), 166 Ohio St. 47. Where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus will not lie. State ex rel. Burley v. Coil Packing, Inc. (1987), 31 Ohio St.3d 18.
{¶ 25} As stated previously, the SHO found a violation of Ohio Adm. Code 4121:1-5-23(E), which provides as follows:
 (E) Approach distances to exposed energized conductors and equipment.
 (1) The requirements of this paragraph apply only to the electric utility and clearance tree-trimming industries.
 (2) No employee shall be required to approach or take any conductive object closer to any electrically energized power conductors and equipment than prescribed in table 4121:1-5-23(E) to this rule unless:
 (a) The employee is insulated or guarded from the energized parts (insulating gloves rated for the voltage involved shall be considered adequate insulation); or
 (b) The energized parts are insulated or guarded from the employee and any other conductive object at a different potential; or
 (c) The power conductors and equipment are deenergized and grounded.
{¶ 26} As indicated previously, the SHO determined that there was no violation of the above code provision. Specifically, the SHO noted, in relevant part, as follows:
 It is noted that OSHA conducted an investigation of the accident. As part of that investigation, OSHA investigators interviewed several people associated with the employer with regard to this incident. As part of the investigation reports are a series of statements taken by the OSHA investigators. * * *
* * *
 Thus, there are two statements which indicate that the decedent was aware that the power lines should be shut off. Indeed, the statement of the General Foreman indicates that he was waiting for the deceased to communicate with him so that the power company can be contacted. Furthermore, the OSHA investigators took 15 different statements regarding this incident. Of those 15 statements, 10 of those expressed either concerns about the safety of trimming the willow tree in question or relayed concerns by their foreman about safety of that job. This concern appears to be confirmed by the 4 photographs on file depicting the willow trees in question.
 There is no evidence in the OSHA investigation materials that the claimant was required or ordered to trim the tree in question (emphasis by Staff Hearing Officer). Indeed, the aforementioned statements on file indicate a concern with the safety of trimming the tree and a consensus that the electrical line should either be sleeved or shut off. Despite all of this, the decedent elected to proceed on the job. While the conclusion of the OSHA is not binding on the Industrial Commission, it is significant. OSHA specifically found that there was no violation of the OSHA regulations. See letter dated July 13, 1993 from Arnis Andersons. Furthermore, in a summary of the accident, OSHA concluded that "it is highly probable that the deceased David Thieman misjudged a hazardous situation."
{¶ 27} The interpretation of a VSSR award is within the final jurisdiction of the commission. State ex rel. Berry v. Indus. Comm. (1983), 4 Ohio St.3d 193. Because a VSSR award is a penalty, however, it must be strictly construed, and all reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer. State ex rel. Burton v. Indus. Comm. (1989), 46 Ohio St.3d 170.
{¶ 28} In this mandamus action, relator contends that the decedent's employer did not have to specifically "order" him to trim the tree in question. Because tree trimming was "required" as part of the decedent's job, relator contends that a violation occurred when the employer failed to "prevent" the decedent from trimming the tree without the electricity to the power lines being shut off or the decedent being protected in some other fashion. Relator cites several cases dealing with intentional torts and asks this court to interpret the word "required" in the same manner. In the intentional tort line of cases cited by relator, the courts have held that the employer does not have to expressly require or order an employee to perform a task for the employer to be liable. However, the three-part test for establishing liability for an employer intentional tort is not relevant to the instant matter. Within the realm of an intentional tort, the employer knows of the existence of a dangerous condition; has knowledge that if the employee is subjected to such dangerous condition, harm to the employee will be a substantial certainty; and with such knowledge, the employer acts to require the employee to continue to perform the dangerous task. The cases cited by relator address the evidence necessary to survive a motion for summary judgment filed by the employer.
{¶ 29} In the present case, no one is going to contend that tree trimming is not a dangerous task. Instead, the stipulated evidence is repleat with posters and notices prepared by the employer reminding its employees that tree trimming is extremely dangerous and that one mistake could cost an employee his life. The employer's employees are reminded of the hazards involved in their job every week at weekly safety meetings. Notices were sent to foreman and crew members reminding them not to touch a branch which is touching a hot wire. Unlike other industries, where the work takes place within a factory setting, the employer is not present at the work site. As such, the employer must be sure that its employees are provided with all of the required safety equipment and instruction before those employees commence their work. The employer prepared manuals explaining the procedures to be followed when trimming a tree safely. The employer held weekly safety meetings to remind the employees of the dangers inherent in the industry. The general foreman met with the crew foremen before work began to assess the danger. The foremen reached a decision concerning how to safely trim certain trees. The decision was made to shut off the power to the lines before work was begun. The decedent was part of the decision-making process and knew that power was to be shut off before he trimmed the tree. Unfortunately, the decedent decided to trim the tree without notifying the general foreman to shut off the power because his crew was ready to proceed. In the present case, the SHO concluded that the employer did exactly that and clearly there is some evidence in the record to support this finding.
{¶ 30} Relator contends that the SHO has simply permitted the employer to delegate its responsibility for the safety of its employees to the crew foreman and contends that such delegation cannot be used to escape liability. Relator cites State ex rel. Cotterman v. St. Marys Foundry (1989), 46 Ohio St.3d 42, for this proposition. In Cotterman, an employee, who also happened to be a supervisor, was injured when a core, weighing at least 4,700 pounds, fell on him. The core was suspended by four chains. Each chain had a load limit of 1,000 pounds for a total limit of 4,000 pounds. After the claimant and his crew cleaned the core, the claimant was killed when some of the links in the chains straightened and the core fell on him.
{¶ 31} The claimant's widow filed an application for a VSSR asserting a violation of Ohio Adm. Code 4121:1-5-15(D)(2), which provides that alloy steel chains shall not be used with loads in excess of the rated capacities prescribed. The commission found no violation solely based upon the fact that the claimant was a supervisor with 44 years of experience with the company. In fact, the commission had stated that it would have found a safety violation if another employee had been injured or killed.
{¶ 32} The court looked at whether the claimant's position as a supervisor and his alleged conduct in selecting the inadequate chains barred his widow's recovery of an additional award. The Ohio Supreme Court concluded that the claimant's status as supervisor was not a factor to be considered and that the proper focus in determining whether a VSSR award should be made remains on the employer. The court went on to note that generally, negligence or absentmindedness of the employee will not bar recovery for a VSSR; however, that is not to say that an employee's conduct will never be a factor in a VSSR. For example, if an employee unilaterally violates a safety requirement, or if an employee fails to use the safety equipment provided for him by his employer who complies with the safety requirement, then an additional award may be denied. The court went on to note that there was nothing in the record to show that the claimant voluntarily chose the incorrect chain.
{¶ 33} The present case differs from the situation in Cotterman in one very significant regard: all the evidence in the present case indicates that the decision had been made to shut off power to the lines before this particular tree was cut. In fact, the general foreman indicated that he was waiting to hear from the decedent that the decedent was ready to cut that tree so that the general foreman could have the power shut off. Because the crews were working in the subdivision all day long, it was not practical to have the electricity shut off to the entire subdivision for the entire day. Instead, the decedent was supposed to tell the general foreman that he was ready to trim the tree in question so that the power could be shut off. In the present case, the decedent did take some action in voluntarily choosing to perform a task that he himself had already concluded should not be performed while the electricity was still on. So, while the employer cannot escape liability for a VSSR by giving a supervisory employee the responsibility of complying with such safety requirement, in the present case, the employer did everything that it could to keep the decedent from taking the action which he took. In the present case, the decedent did take action which went against everything the employer instructed him to do and with the specific plans which had been determined to prevent accidents like the one that happened which resulted in the decedent's death.
{¶ 34} Further, in State ex rel. Quality Tower Serv., Inc. v. Indus. Comm. (2000), 88 Ohio St.3d 190, the court refused to find a VSSR when the employee had been told what strength straps to use in his work. The employee used lighter duty straps instead and died when the straps failed. The court noted that the absolute duty of compliance standard of Cotterman was too strict. Here, the decedent knew that the decision had been made to shut off the power before the tree was trimmed. The decedent, for whatever reason, did not follow that directive by calling the general foreman when his crew was ready to begin work. The commission found that the employer did comply with the safety requirements by way of the above and that decision is supported by some evidence.
{¶ 35} Because this magistrate finds that there is some evidence in the record to support the commission's determination that the employer did not violate a specific safety requirement in the present case, relator's request for a writ of mandamus should be denied.