DECISION
{¶ 1} Relator, K.A.B.E. Enterprises, Inc. d/b/a Dapper Installs ("relator"), commenced this original action requesting that this court issue a writ of mandamus *Page 2 
ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order determining that relator is obligated to pay the outstanding premium obligation of Reliance Resources, Inc. ("Reliance") for the first half of the 2003 payroll period, and to enter an order finding that relator is not obligated to pay the aforesaid premium.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that the commission did not abuse its discretion in ordering relator to pay the disputed premium because Ohio Adm. Code 4123-17-15 authorizes respondent, Administrator of the Ohio Bureau of Workers' Compensation ("bureau"), to assess premium liability upon the client-employer when a professional employment organization ("PEO") fails to comply with the rule. Relator timely filed objections to the magistrate's decision and the bureau filed a memorandum in opposition to those objections. This cause is now before the court for a full evaluation of the merits. Relator raises six objections, which we will discuss in turn.
 {¶ 3} In its first two objections, relator argues that the magistrate erred by finding that Ohio Adm. Code 4123-19-07 requires employers to pay a premium retrospectively for coverage and that, therefore, Reliance was not a complying employer for the January 1 through June 30, 2003 payroll period, and for July 1 through August 15, 2003. Specifically, relator argues that Reliance was only noncomplying once it failed to pay the premium, which was due months after the end of the January 1 through June 30, 2003 reporting period. *Page 3 
 {¶ 4} Based upon the fact that Reliance possessed a certificate of coverage for the relevant period and, because other sections of the administrative code provide that coverage is extended for up to eight months past this period in order to give the employer time to pay the premium, relator concludes that R.C. 4123.32(B) and the related rules are forward-looking, not retrospective, as the magistrate stated in his second finding of fact. Thus, it maintains, Reliance was not a noncomplying employer for the January 1 through June 30, 2003 payroll period. We disagree.
 {¶ 5} R.C. 4123.35(A) requires that workers' compensation premiums are due and payable semiannually. Ohio Adm. Code 4123-19-07(B) provides that employers must report payroll information for a given six-month period, and remit the payroll report and the corresponding premium, within one month of the expiration of that period.
 {¶ 6} Additionally, R.C. 4123.36 provides, in pertinent part:
 Whenever an employer fails to pay a premium due, the administrator of workers' compensation shall cover the default in excess of the employer's premium security deposit by transfer of money from the premium payment security fund to the state insurance fund. The transfer establishes coverage of the employer for the immediately completed six-month period together with the ensuing two-month adjustment period and the employer is not liable to respond in damages at common law or by statute for injuries or death of any employees wherever occurring during that eight-month period.
(Emphasis added.)
 {¶ 7} From this language it is clear that premium payments are consideration paid for the coverage period immediately preceding the payment due date. Thus, the magistrate correctly found that payments are applied retrospectively. Notwithstanding other rules that provide for a grace period for payment, during which coverage will not *Page 4 
lapse, payments do not secure future coverage. Rather, once all job category and other data is known and submitted for each completed six-month period, then the actual price for coverage is established and the premium is paid.
 {¶ 8} In the present case, when Reliance failed to pay the premium due for the January 1 through June 30, 2003 payroll period, it became a noncomplying employer for that period, notwithstanding the fact that it had indeed been provided coverage for that period and could not have been held to answer in damages for any work-related injuries sustained or occupational diseases contracted during that time period. For these reasons, relator's first and second objections are overruled.
 {¶ 9} In its third objection, relator argues that the magistrate erred in deciding that former Ohio Adm. Code 4123-17-15 authorized the bureau to assess premium liability to relator for the payroll period June 1 through June 30, 2003. The magistrate concluded that the bureau's action was authorized because the rule specifies that "the payroll of the assigned workers shall be reported by the client employer under its workers' compensation risk number for * * * premium * * * purposes" in instances where a PEO such as Reliance "fails to comply with this rule."
 {¶ 10} Specifically, the magistrate reasoned that because former Ohio Adm. Code 4123-17-15(A)(1)(d) required PEOs to "[c]omply with applicable state laws regarding workers' compensation insurance coverage," this section of the rule required PEOs such as Reliance to pay premiums as they became due. Because paragraph (E) of the rule provided that when a PEO "fails to comply with this rule * * * the payroll of the assigned worker shall be reported by the client employer under its workers' compensation risk number for workers' compensation premium and claims purposes, unless prohibited by *Page 5 
federal law" the magistrate concluded that Reliance's failure to comply with paragraph (A)(1)(d) triggered relator's liability under paragraph (E).
 {¶ 11} In its objections, relator argues that paragraph (A)(1)(d) did not require Reliance to do anything because, relator maintains, paragraph (A) is merely definitional and prescribes no duties. We disagree. Certainly, part of paragraph (A) is definitional. However, another part of that paragraph plainly prescribes the doing of certain actions, e.g., "notify,"[1] "assume responsibility,"[2] "be responsible for,"[3] and "comply."[4] Moreover, these actions clearly must be accomplished by the PEO. When a PEO fails to comply with any aspect of the rule, including paragraph (A)'s mandatory requirements, then, pursuant to the plain language of paragraph (E), the client employer-here, relator-must report the payroll for premium purposes and, it follows, must be responsible for those premiums.
 {¶ 12} Because Reliance did not pay the premium for the period January 1 through June 30, 2003, it did not comply with Ohio Adm. Code4123-17-15(A)(1)(d), and this failure triggered relator's liability under paragraph (E) of the rule. Relator argues that the bureau's action, premised upon this rule, violated the holding in State ex rel.Crosset Co., Inc. v. Conrad (2000), 87 Ohio St.3d 467, 721 N.E.2d 986. In that case, the Supreme Court of Ohio held that the bureau has the authority to determine successors-in-interest for purposes of experience rating, but may not do so for purposes of obligations for unpaid premiums. *Page 6 
 {¶ 13} In Crosset, the court considered "whether a corporation that purchases the foreclosed assets of another corporation through an intermediary bank may be held liable for the outstanding workers' compensation claims costs incurred during the predecessor's participation in a retrospective-rating plan." Id. at 471. In the present case, however, liability for outstanding workers' compensation costs incurred during a predecessor's participation in a retrospective-rating plan is not at issue. Indeed, the bureau here did not make any determination as to successor-in-interest status. Rather, the bureau applied a rule that essentially transfers liability for premiums without the necessity of a finding of successorship. BecauseCrosset concerned a wholly distinct issue from that presented in this case, the magistrate did not err in failing to discuss and apply it.
 {¶ 14} For all of the foregoing reasons, relator's third objection is overruled.
 {¶ 15} In its fourth objection relator argues that the magistrate erred in not determining that the Premium Payment Security Fund ("fund") is the appropriate source from which the bureau should have sought payment upon Reliance's default. Specifically, it cites R.C. 4123.34(D), which establishes the fund "to pay for any premiums due from an employer and uncollected that are in excess of the employer's premium security deposit." Relator contends that the establishment of the fund evidences the General Assembly's intent to "not burden innocent client-employers, like Relator."[5]
 {¶ 16} However, nothing in R.C. 4123.34(D), or any other statute or rule, requires the bureau to seek reimbursement from the fund before seeking it from relator who, pursuant to Ohio Adm. Code 4123-17-15, is an appropriate "employer" from which the *Page 7 
bureau may seek payment. Until the bureau seeks reimbursement from relator, the unpaid premium is not yet "uncollected" so as to trigger reimbursement from the fund.
 {¶ 17} Relator also argues that the bureau should not seek reimbursement from relator because to do so would be unjust and thus a violation of R.C. 4123.32(C), which requires that the bureau's rules be "just in the circumstances." But that statute is wholly inapplicable because it concerns only those bureau rules "covering the rates to be applied where one employer takes over the occupation or industry of another or where an employer first makes application for state insurance." This case does not concern such rules and, therefore, the "just in the circumstances" provision is inapplicable here.
 {¶ 18} For these reasons, relator's fourth objection is overruled.
 {¶ 19} In its fifth objection, relator argues that the magistrate erred by not deciding that the bureau must consider Reliance, not relator, as the noncomplying employer and therefore may not transfer liability for unpaid premiums from Reliance to relator under former Ohio Adm. Code 4123-17-15.
 {¶ 20} For support of this proposition, relator cites Ohio Adm. Code4123-14-01, which defines "noncomplying employer" as "[a]n employer * * * who * * * fails to * * * make payments of premiums to the state insurance fund, as required by Chapter 4123 of the Revised Code and the rules of the industrial commission and the bureau of workers' compensation." To not consider Reliance a noncomplying employer under the foregoing definition, relator contends, would be to "convert a noncomplying PEO-employer into a complying employer by transferring the PEO's premium obligations."[6] Essentially, relator *Page 8 
argues that application of former Ohio Adm. Code 4123-17-15 impermissibly conflicts with Ohio Adm. Code 4123-14-01.
 {¶ 21} " ` It is a well settled rule of statutory construction that where a statute couched in general terms conflicts with a specific statute on the same subject, the latter must control.' " State v.Taylor, 113 Ohio St.3d 297, 2007-Ohio-1950, 865 N.E.2d 37, ¶ 12, quotingHumphrys v. Winous Co. (1956), 165 Ohio St. 45, 48, 59 O.O. 65,133 N.E.2d 780. Indeed, R.C. 1.51 provides:
 If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.
Moreover, R.C. 1.47 provides:
 In enacting a statute, it is presumed that:
 (C) A just and reasonable result is intended;
 (D) A result feasible of execution is intended.
 {¶ 22} The foregoing rules of statutory construction apply to our interpretation of the potentially conflicting regulations at issue in relator's fifth objection. See Johnson's Markets, Inc. v. New CarlisleDept. of Health (1991), 58 Ohio St.3d 28, 567 N.E.2d 1018; see, also,State ex rel. Parks v. Indus. Comm. (1999), 85 Ohio St.3d 22,706 N.E.2d 774 (holding that the Industrial Commission's rules for specific safety requirements have the effect of legislative enactments and therefore are subject to the ordinary rules of statutory construction). *Page 9 
 {¶ 23} Here, Ohio Adm. Code 4123-14-01 is the more general regulation defining a "noncomplying employer," whereas former Ohio Adm. Code4123-17-15 is more specific regarding who will bear the responsibility for a premium required to be paid, in the first instance, by a PEO. Applying the foregoing rules of statutory construction, former Ohio Adm. Code 4123-17-15 controls. For this reason, relator's fifth objection is overruled.
 {¶ 24} In its sixth objection, relator argues that the magistrate erred "in analyzing current R.C. Chapter 4125."[7] But it is clear from the magistrate's decision that the magistrate based his conclusions upon the statutory and regulatory law applicable in 2003, not upon provisions of R.C. Chapter 4125 that became effective in 2004. Thus, relator's sixth objection is without merit and is overruled.
 {¶ 25} For all of the foregoing reasons, after a review of the magistrate's decision and an independent review of the record, as well as due consideration of relator's objections, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We, therefore, adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.
 {¶ 26} Accordingly, relator's objections to the magistrate's decision are overruled and the requested writ of mandamus is hereby denied.
Objections overruled; writ of mandamus denied.
 BRYANT and McGRATH, JJ., concur. *Page 10 APPENDIXA MAGISTRATE'S DECISION Rendered on November 22, 2006 IN MANDAMUS {¶ 27} In this original action, relator, K.A.B.E. Enterprises, Inc., requests a writ of mandamus ordering respondent, William E. Mabe, Administrator, Ohio Bureau of Workers' Compensation, to vacate his order determining that relator is obligated for the *Page 11 
premium due for the first half of the 2003 reporting period, and to enter an order finding that relator is not so obligated.
Findings of Fact: {¶ 28} 1. In February 2001, relator entered into a written contract with Reliance Resources, Inc. ("Reliance"), whereby Reliance agreed to perform for relator the duties of a professional employer organization ("PEO"). Under the terms of the PEO contract, Reliance agreed to provide or assign to relator permanent staffing for relator's workforce in exchange for a fee to be paid by relator to Reliance. Under the written contract, Reliance agreed to pay, out of the fee it received from relator, the workers' compensation premiums as they became due on the reported payroll of the assigned workers. Under the terms of the written contract, the assigned workers were considered to be the employees of Reliance even though they actually performed work for relator.
 {¶ 29} 2. By statute, premiums for workers' compensation coverage are due and payable semi-annually. R.C. 4123.35(A). Premiums are assessed on the payroll to be reported by the employer following any six-month period of coverage. Ohio Adm. Code 4123-19-07. Thus, premiums are paid retrospectively for coverage. Id.
 {¶ 30} 3. On or about August 15, 2003, Reliance ceased doing business. Reliance had failed to report the payroll and to pay the premium due on the workers assigned to relator for the period of coverage for the first half of 2003, i.e., January through June 2003.
 {¶ 31} 4. By letter mailed October 20, 2003, the Ohio Bureau of Workers' Compensation ("bureau") advised relator to report its payroll for the first six months of *Page 12 
2003 and to pay the outstanding premium. Relator failed to respond to the bureau's letter.
 {¶ 32} 5. By letter dated March 22, 2004, the bureau informed relator that because it had failed to report its payroll, the premium due for the first half of 2003 would be calculated by the bureau based upon estimated payroll.
 {¶ 33} 6. Apparently, relator's subsequent receipt of an invoice from the bureau for the premium due prompted relator to file a protest.
 {¶ 34} 7. Relator's protest was among several heard by the bureau's adjudicating committee on August 17, 2004. Following the hearing, the adjudicating committee issued the following decision and order:
 The facts of this case are as follows: The Bureau assessed the employers the premium for the first half of the 2003 payroll period. The obligation arose as a result of Reliance Resources Inc. (Reliance) filing bankruptcy and going out of business on August 15, 2003. Reliance and these employers had been in a Professional Employment Organization (PEO) agreement whereby Reliance assigned employees to them. Reliance failed to pay its premium that was due for the aforementioned period and the Bureau assessed the employers the amount of premium that Reliance owed based on the payroll of the assigned workers.
 The employers objected to the assessment and requested a hearing before the Adjudicating Committee.
 * * *
 The employers' representative stated the employers entered into a PEO agreement with Reliance in February of 2001. Pursuant to this agreement Reliance provided the companies with employees and other human resource services in exchange for a fee. A portion of that fee was to include the workers' compensation premiums for coverage of the employees provided. He argues that the employers are not responsible for the premium payments owed to the *Page 13 
Bureau. Under the contractual agreement between the parties and the Bureau's rules governing PEOs, the employees were employees of Reliance and Reliance was responsible for paying the workers' compensation premiums. The employers relied on this regulatory scheme as an assurance that the premiums were being paid when due. When the employers paid the fee to Reliance, they had no way to verify that Reliance was making the premium payments to the Bureau. He argues that it is inequitable to force this employer to pay twice for the premiums, once to Reliance and then again to the Bureau, and requests that the assessment for the premiums be vacated. He also argues that Rule 4123-17-15(E) does not allow the Bureau to transfer the obligation for paying premiums from the PEO to the client employer for payroll periods during which the PEO agreement was in force and recognized by the Bureau. Therefore, he contends, the Bureau lacks authority to make the assessments and they should be voided.
 The Bureau's representative stated that the aforementioned rule grants the Bureau the authority to transfer the obligation for the payroll and premium obligation from a PEO to the client employers once the PEO fails to comply with the rule.
 In respect to a PEO that has failed to comply with Rule 4123-17-15, paragraph (E) of the rule states in pertinent part:
 A staff leasing/professional employer organization . . . which fails to comply with this rule shall not be considered the employer for workers' compensation purposes. In these instances the payroll of the assigned workers shall be reported by the client employer under its workers' compensation risk number for workers' compensation premiums and claims purposes . . .
 The rule states that the workers' compensation obligation for the assigned workers becomes that of the client employer in instances where the PEO fails to comply with the rule rather than for future payroll periods after a PEO has failed to comply with the rule. (Emphasis added.) When Reliance failed to make its premium payment for the first half of 2003, it was not in compliance with the rule and the responsibility *Page 14 
for the premium payment reverted back to the client employer for that period.
 The Committee finds that the rule has been properly applied to the facts presented in this case. The Committee is aware that the Bureau promulgated this rule in an attempt to accommodate the new and unique relationship between the client employer and a PEO in respect to workers' compensation. The Bureau had to ensure that the employees would be covered and the appropriate premium collected notwithstanding any conflicts that might arise between a PEO and its client employers. It is reasonable that in doing so the Bureau would require the PEO to make the premium payment whether or not it received its fee from the client employer and require the client employer to make the premium payment if not made by the PEO. It was the Bureau's fiduciary obligation to the Fund to insure that the premium payments are made whether or not the parties complete the contractual obligations to each other.
 Therefore, for the foregoing reasons, it is the decision of the Adjudicating Committee that the employer is obligated for the premium due for the first half of the 2003 reporting period and that the decision of the Policy Services Section is hereby affirmed.
(Emphasis sic.)
 {¶ 35} 8. Relator administratively appealed the August 17, 2004 decision and order of the adjudicating committee.
 {¶ 36} 9. Following a June 2, 2005 hearing, the administrator's designee issued an order affirming the decision and order of the adjudicating committee.
 {¶ 37} 10. On February 22, 2006, relator, K.A.B.E. Enterprises, Inc., filed this mandamus action. *Page 15 
Conclusions of Law: {¶ 38} The issue is whether former Ohio Adm. Code 4123-17-15 authorized the bureau to assess premium liability upon relator for the first half of the 2003 reporting period.
 {¶ 39} Finding that former Ohio Adm. Code 4123-17-15 authorized the bureau to assess premium liability upon relator for the reporting period in question, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 40} Effective November 5, 2004, R.C. 4125.01 et. seq. was enacted by the General Assembly subsequent to the events at issue here. Nevertheless, the statute provides important background to an understanding of the issue before this court.
 {¶ 41} R.C. 4125.01 provides:
 As used in this chapter:
 (A) "Client employer" means a sole proprietor, partnership, association, limited liability company, or corporation that enters into a professional employer organization agreement and is assigned shared employees by the professional employer organization.
 (B) "Coemploy" means the sharing of the responsibilities and liabilities of being an employer.
 (C) "Professional employer organization" means a sole proprietor, partnership, association, limited liability company, or corporation that enters into an agreement with one or more client employers for the purpose of coemploying all or part of the client employer's workforce at the client employer's work site.
 (D) "Professional employer organization agreement" means a written contract to coemploy employees between a professional employer organization and a client employer *Page 16 
with a duration of not less than twelve months in accordance with the requirements of this chapter.
 (E) "Shared employee" means an individual intended to be assigned to a client employer on a permanent basis, not as a temporary supplement to the client employer's workforce, who is coemployed by a professional employer organization and a client employer pursuant to a professional employer organization agreement.
R.C. 4125.02 provides:
 The administrator of the bureau of workers' compensation shall adopt rules in accordance with Chapter 119. of the Revised Code to administer and enforce this chapter.
R.C. 4125.03(A) provides:
 The professional employer organization with whom a shared employee is coemployed shall do all of the following:
 (1) Pay wages associated with a shared employee pursuant to the terms and conditions of compensation in the professional employer organization agreement between the professional employer organization and the client employer;
 (2) Pay all related payroll taxes associated with a shared employee independent of the terms and conditions contained in the professional employer organization agreement between the professional employer organization and the client employer;
 (3) Maintain workers' compensation coverage, pay all workers' compensation premiums and manage all workers' compensation claims, filings, and related procedures associated with a shared employee in compliance with Chapter 4121. and 4123. of the Revised Code, except that when shared employees include family farm officers, ordained ministers, or corporate officers of the client employer, payroll reports shall include the entire amount of payroll associated with those persons;
 (4) Provide written notice to each shared employee it assigns to perform services to a client employer of the *Page 17 
relationship between and the responsibilities of the professional employer organization and the client employer;
 (5) Maintain complete records separately listing the manual classifications of each client employer and the payroll reported to each manual classification for each client employer for each payroll reporting period during the time period covered in the professional employer organization agreement;
 (6) Maintain a record of workers' compensation claims for each client employer[.]
R.C. 4125.04(A) provides:
 When a client employer enters into a professional employer organization agreement with a professional employer organization, the professional employer organization is the employer of record and the succeeding employer for the purposes of determining a workers' compensation experience rating pursuant to Chapter 4123. of the Revised Code.
 {¶ 42} Pursuant to R.C. 4125.02, the administrator promulgated Ohio Adm. Code 4123-17-15 effective November 22, 2004. That rule currently reads:
 (B) A PEO must perform the following functions:
 (1) Provide written notice to each shared employee it assigns to a client employer of the relationship between and the responsibilities of the PEO and the client employer;
 (2) Assume responsibility for payment of wages, related taxes and workers' compensation premiums for shared employees as established within the PEO agreement. The responsibility of making the payment is not contingent on receipt of payment from client;
 (3) Be responsible for maintaining both adequate and required employment-related records for employees, and for reporting such information as may be required by appropriate governmental agencies; *Page 18 
 (4) Comply with applicable state laws regarding workers' compensation insurance coverage
 (6) Maintain workers' compensation coverage, pay all workers' compensation premiums and manage all workers' compensation claims, filings, and related procedures associated with a shared employee in compliance with Chapters 4121. and 4123. of the Revised Code[.] * * *
 (E) A PEO which enters into a PEO agreement with a noncomplying employer or a PEO which fails to comply with this rule shall not be considered the employer for workers' compensation purposes. In these instances the payroll of the shared employees shall be reported by the client employer under its workers' compensation risk number for workers' compensation premium and claims purposes, unless prohibited by federal law. Claims that are filed by the client employer's shared employees shall be charged to the experience of the client employer.
 {¶ 43} Applicable here, former Ohio Adm. Code 4123-17-15, effective July 1, 1997 (amended November 22, 2004, as above-noted), read:
 (A) As used in this rule:
 (1) "Staff leasing/professional employer organization" means a person or employer which arranges with one or more client employers, under written contract, to employ all or part of the work force for a client employer and to place those assigned workers on a permanent basis to the client employer.
 A staff leasing/professional employer organization must meet the following criteria:
 (a) Notify all assigned workers that they are employed by the staff leasing/professional employer organization;
 (b) Assume responsibility for payment of wages and related taxes for assigned workers from their own account(s) not contingent on receipt of payment from client; *Page 19 
 (c) Be responsible for maintaining both adequate and required employment-related records for employees, and for reporting such information as may be required by appropriate governmental agencies;
 (d) Comply with applicable state laws regarding workers' compensation insurance coverage.
 (3) "Client employer" means a person or employer who obtains all or part of its work force from a professional employer arrangement. Client employer does not mean an employer who is a noncomplying employer as defined in rule 4123-14-01 of the Administrative Code, noncomplying employers within the meaning of the law.
 (6) "Assigned worker" means a person performing service for a client employer under a staff leasing/professional employer arrangement.
 (7) "Staff leasing/professional employer arrangement" means an arrangement, under written contract, whereby:
 (a) A staff leasing/professional employer organization assigns workers to perform services to a client employer;
 (b) The arrangement is intended to be, or is, ongoing rather than temporary in nature.
 (B) Where a client employer enters into a staff leasing/professional employer arrangement, the staff leasing/professional employer organization shall be considered the succeeding employer, solely for purpose of workers' compensation experience, and shall be subject to rule 4123-17-02 of the Administrative Code, basic or manual rate.
 If the contractual agreement between a staff leasing/professional employer organization and a client employer is terminated, the portion of the experience of the staff *Page 20 
leasing/professional employer organizations related to the client employer shall be transferred to the client employer.
 (E) A staff leasing/professional employer organization which enters into a staff leasing/professional employer arrangement with a noncomplying employer or a staff leasing/professional employer organization which fails to comply with this rule shall not be considered the employer for workers' compensation purposes. In these instances the payroll of the assigned worker shall be reported by the client employer under its workers' compensation risk number for workers' compensation premium and claims purposes, unless prohibited by federal law. Claims that are filed by the client employer's assigned workers shall be charged to the experience of the client employer.
 {¶ 44} Again, the issue here is whether former Ohio Adm. Code4123-17-15 authorized the bureau to assess premium liability upon relator for the first half of the 2003 reporting period.
 {¶ 45} The decision of the adjudicating committee, as affirmed by the administrator's designee, turned on interpretation of former Ohio Adm. Code 4123-17-15(E) which states in pertinent part:
 * * * [A] * * * professional employer organization which fails to comply with this rule shall not be considered the employer for workers' compensation purposes. In these instances the payroll of the assigned workers shall be reported by the client employer under its workers' compensation risk number for workers' compensation premium and claims purposes[.]
 {¶ 46} Again, former Ohio Adm. Code 4123-17-15(A)(1)(d) provides that a PEO, such as Reliance, must meet certain criteria, such as "[c]omply with applicable state laws regarding workers' compensation insurance coverage." *Page 21 
 {¶ 47} According to relator, former Ohio Adm. Code 4123-17-15(A) is "definitional only." (Relator's brief, at 11.) Thus, relator concludes that paragraph (A) of the rule did not require Reliance to do anything. Relator asserts, "Reliance could not * * * fail to comply with a definition." (Relator's reply brief, at 2.)
 {¶ 48} The magistrate disagrees with relator's claim that paragraph (A) of the rule if definitional only. To the contrary, paragraph (A) requires the PEO to comply with applicable state laws regarding workers' compensation insurance coverage.
 {¶ 49} As the bureau points out here, R.C. 4123.35 provides that:
 * * * [E]very employer * * * shall pay semiannually in the months of January and July into the state insurance fund the amount of annual premium the administrator of workers' compensation fixes for the employment or occupation of the employer[.] * * *
 {¶ 50} When Reliance failed to pay the premium due for the workers' compensation coverage for the first half of 2003, Reliance violated R.C.4123.35. When Reliance violated R.C. 4123.35, it was not in compliance with former Ohio Adm. Code 4123-17-15(A)(1)(d), and, thus, Reliance shall not be considered the employer for workers' compensation purposes under former Ohio Adm. Code 4123-17-15(E). In that instance, the payroll of the assigned workers shall be reported by relator.
 {¶ 51} There is perhaps a suggestion advanced by relator here that the bureau's interpretation of former Ohio Adm. Code 4123-17-15 is an impermissible retrospective application of the former rule, although relator does not invoke any constitutional principle. In that regard, the magistrate notes that premiums are, by law, paid for retrospective coverage. See Ohio Adm. Code 4123-19-07. Thus, relator's suggestion lacks merit. *Page 22 
 {¶ 52} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
KENNETH W. MACKE, MAGISTRATE.
[1] Former Ohio Adm. Code 4123-17-15(A)(1)(a).
[2] Former Ohio Adm. Code 4123-17-15(A)(1)(b).
[3] Former Ohio Adm. Code 4123-17-15(A)(1)(c).
[4] Former Ohio Adm. Code 4123-17-15(A)(1)(d).
[5] (Objections, 16.)
[6] (Objections, 18.)
[7] (Objections, 19.) *Page 1